**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LIBERTY MUTUAL
INSURANCE COMPANY,

        Plaintiff,

v.                                                            CIVIL CASE NO. 03-60183
                                                              HON. MARIANNE O. BATTANI
STAFFING AMERICA OF ALABAMA, INC.,
SUCCESS PERSONNEL OF CINCINATTI,
DAVID GLOECKNER, and BROWNRIGG
COMPANIES, LTD.,

        Defendants.

_____/

**OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT BROWNRIGG'S MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. #50) and defendant Brownrigg's Motion for Summary Judgment (Doc. #51). This matter arises out of two workers' compensation insurance policies issued by Liberty Mutual to the policyholder defendants, Staffing America of Alabama, Inc. ("Staffing Alabama") and Success Personnel of Cincinnati ("Success") for their operations in Alabama. Plaintiff filed suit against defendant Brownrigg for negligent misrepresentation for its role in submitting applications for workers' compensation insurance that allegedly contained false information.

In general, the state of Alabama requires employers located in that state to provide workers' compensation insurance coverage for their employees. Plaintiff is an insurance carrier that provides workers' compensation insurance coverage in Alabama through the involuntary

market or "pool." The involuntary market for workers' compensation insurance is administered through the National Counsel on Compensation Insurance ("NCCI"),[1] which has been granted the authority to administer involuntary market workers' compensation insurance by the State of Alabama. The involuntary market plan or "pool" allows employers required to have workers' compensation insurance to obtain the insurance despite their inability to obtain it in the voluntary market.

On July 7, 2000, Staffing Alabama, through David Gloeckner, submitted an application for workers compensation insurance to the NCCI. On May 14, 2001, Success, through David Gloeckner, also submitted an application for workers compensation insurance to the NCCI. Defendant Brownrigg was the producing agent for both Staffing Alabama and Success. It prepared the applications and/or assisted in the submission of the applications for both companies. At the bottom of the applications, the producing agent signs the following statement: "The producer also certifies that he/she has been authorized to submit the application on behalf of the applicant and that all information provided on the accord 130 and accord 135 is true and accurate to the best of his/her knowledge and belief." Nancy Brownrigg, President of defendant Brownrigg, on behalf of Success, signed the certification. Valissa Naganashe, one of defendant Brownrigg's employees, on behalf of Staffing Alabama, authorized her signature to be placed by

---

[1] "NCCI is a non-profit corporation and a licensed rating organization for workers' compensation insurance. NCCI engages in rate-making related activities which assist insurers writing workers' compensation business. In Alabama, NCCI also serves as the Administrator of the Workers' Compensation Insurance Plan, the state-approved and regulated structure by which Alabama employers unable to obtain workers' compensation insurance in the voluntary market can apply for and obtain such insurance." Four Way Plant Farm, Inc. v. National Council on Compensation Ins., 894 F.Supp. 1538, 1541 (M.D. Ala. 1995).

the insured on the producer certificate without reviewing the application. The applications were accepted, and the NCCI assigned Liberty Mutual to underwrite both policies.

Plaintiff alleges that the applications contained false information; specifically, that the applications indicated that there was no commonly owned or managed entity with the applicant and that there was no commonly owned or managed entity that currently owed any money to any insurance company for workers' compensation premiums at the time of the application. Defendant Gloeckner was the owner/manager of Staffing America of Detroit, Inc. ("Staffing Detroit") during the time he was applying for insurance on behalf of Staffing Alabama and Success. At the time the applications in question were submitted, Staffing Detroit was involved in litigation with Liberty Mutual over outstanding premiums. Ultimately, a judgment was entered against Staffing Detroit in favor of Liberty Mutual in that matter. Plaintiff alleges that both Ms. Brownrigg and Ms. Naganashe were aware of Staffing Detroit, and its relationship to the other defendants, when they signed the applications. Plaintiff also alleges that Brownrigg had knowledge of the falsity of the information submitted through contact with the attorney representing Staffing Detroit in the course of the unpaid premium dispute with Liberty Mutual. Thus, Plaintiff claims Ms. Brownrigg and Ms. Naganashe were fully aware of the litigation and unpaid premiums by Staffing Detroit, and were aware of the common ownership, or, at minimum, common management of the companies when the applications were submitted to NCCI and the policies were issued by Liberty Mutual.

Plaintiff contends that had the information been properly filled out, the NCCI would have rejected the application or required that the previous litigation be resolved prior to issuing a policy. However, relying on the false information, Liberty Mutual issued a workers'

compensation and employers' liability insurance policy to Staffing Alabama. The policy was effective commencing June 30, 2000 through June 30, 2001. However, the policy was cancelled prematurely for nonpayment of premium. Plaintiff also alleges it relied on the false information in Success' application when it issued a workers' compensation and employers' liability insurance policy to Success. The policy was effective commencing May 18, 2001, through May 18, 2002. This policy was also cancelled prematurely for nonpayment of premium.

Plaintiff now seeks summary judgment for negligent, as well as innocent, misrepresentation contending that Brownrigg knew, or at least should have known, that the information was false, but still allowed the applications to be filed with the Pool Administrator in Alabama. Plaintiff wishes to recover the remaining premium payments due for the policy period as damages for the alleged misrepresentation. Defendant also seeks summary judgment, contending that Plaintiff cannot establish its innocent misrepresentation claim because a lack of privity of contract, and because the alleged misrepresentation did not inure to the benefit of Brownrigg. Defendant also contends that Plaintiff's negligent misrepresentation claim fails as a matter of law because: the representation was not false; Defendant owed no business or professional duty of care to provide accurate information to Liberty Mutual; Plaintiff did not rely on the false statement because of the nature of how the coverage was assigned, and because it had actual knowledge of Gloeckner's common management or ownership of Staffing Detroit, Staffing Alabama, and Success, and; Plaintiff did not suffer damages as a result of Brownrigg's actions.

**II.     STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue.  FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).  "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).  The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See Hunt v.

Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)).  To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50.  "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence itself need not be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

**III.   ANALYSIS**

A "negligent misrepresentation claim, . . . requires plaintiff to prove 'that a party

justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.'" The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust, 686 N.W.2d 770, 783 (Mich. Ct. App. 2004)(quoting Law Offices of Lawrence J Stockler, PC v. Rose, 174 Mich. App. 14, 30, 436 N.W.2d 70 (1989). In other words, in order to establish negligent misrepresentation, a plaintiff must prove: 1) the defendant made a material misrepresentation; 2) the representation was false; 3) the defendant was negligent in making the misrepresentation, i.e., the defendant breached a business or professional duty of care to provide accurate information to those who employ him; 4) the plaintiff relied on the false statement, and; 5) the plaintiff suffered damages as a result. Mickam v. Joseph Louis Palace Trust, 849 F.Supp. 516, 521 (E.D. Mich. 1993).

Innocent and negligent misrepresentation are closely related, however, substantial differences exist. ". . . [W]hile it is unnecessary to show that the innocent misrepresenter knew his representation was false, it is necessary to show that not only does the victim suffer injury, but also the injury must inure to the misrepresenter's benefit." U.S. Fidelity and Guaranty Co. v. Black, 313 N.W.2d 77, 85 (Mich. 1981). Moreover, "the rule of innocent misrepresentation only applies to parties in privity of contract . . . ." Id.

Assuming, *arguendo*, that Plaintiff's complaint adequately alleged facts to state a cause of action for innocent misrepresentation, that claim fails as a matter of law because Liberty Mutual and Brownrigg were not in privity of contract.

> "Nearly every suit to recover damages for fraud arises from a contract. The plaintiff sues to recover damages because he has been fraudulently induced to make that contract. The defendant may be, and generally is, the other party to that contract. Sometimes, however, the defendant is a third person, either the agent of the other party, or perhaps some one having no legal relation whatever to either party. . . . I draw a distinction between the suits brought against a party to

7

> the contract and the suits brought against those who are not parties to the contract. If it is brought against a party to the contract, that principle is applicable. If it is not brought against a party to the contract, that principle is not applicable."
> Aldrich, supra, 154 Mich. 30, 117 N.W. 581.

Black, 313 N.W.2d at 84, n. 9 (Mich. 1981)(quoting Aldrich v. Scriber, 154 Mich. 23, 30, 117 N.W. 581, 584 (Mich. 1908)). Because Brownrigg is not a party to the insurance contract, which is the source of Plaintiff's alleged damages, there is no privity of contract, and it cannot be held liable for innocent misrepresentation.

Plaintiff's negligent misrepresentation claim also fails. Even if Plaintiff could establish the first four elements of the negligent misrepresentation claim as a matter of law, it cannot show it is entitled to damages because of Brownrigg's alleged misrepresentations. The Michigan Court of Appeals held that the plaintiffs in Stockler were not entitled to recovery for an alleged negligent misrepresentation because they were ". . . a third party to the contract between" two other corporate entities. Stockler, 436 N.W.2d at 75, 86. In such situations, the court of appeals held that the RESTATEMENT (SECOND) OF TORTS, § 552B applied. Id., at 82. Applying that section of the Restatement, the Michigan Court of Appeals held that "an injured person is not entitled to recover the loss of his bargain for a mere negligent misrepresentation and that the proper measure of damages is the amount necessary to compensate the injured person for the pecuniary loss (i.e. out-of-pocket loss) suffered in reliance upon the misrepresentation." Id., at 86. Likewise, in this case, Brownrigg is a third party to the contracts between Liberty Mutual and Success, and Liberty Mutual and Staffing Alabama. Thus, Liberty Mutual is only entitled to any pecuniary loss caused by reliance on the misrepresentation, but is not entitled to recover the remaining unpaid premiums. Liberty Mutual admitted that it profited from the insurance contracts, thus, it has shown no pecuniary loss for which it can recover.

Liberty Mutual also argues that it is entitled to the remaining premiums because it is potentially liable for workers' compensation claims that may manifest in the future. Thus, it argues that it could experience pecuniary loss in the future. However, recovery is not available for remote, contingent, or speculative damages. Sutter v. Biggs, 139 N.W.2d 684, 686 (Mich. 1966). Moreover Liberty's contention that it is still potentially liable to pay benefits for policies cancelled in 2000 and 2001 is meritless.

> The pertinent notice provisions in the Act are contained in § 25-5-78, Ala.Code 1975. That section provides that "an injured employee or the employee's representative, within five days after the occurrence of an accident, shall give or cause to be given to the employer written notice of the accident." Failure to give notice, in the absence of "physical or mental incapacity, other than minority, fraud or deceit, or equal good reason," will defeat a claimant's entitlement to medical benefits and compensation accrued before notice is ultimately provided. Id. However, § 25-5-78 also provides that " no compensation shall be payable unless written notice is given within 90 days after the occurrence of the accident or, if death results, within 90 days after the death" (emphasis added). Thus, while a failure to notify an employer of an accident within 5 days of its occurrence may be excusable under certain circumstances, and will work only a partial forfeiture of benefits, a failure to effect notice within 90 days is an absolute bar to recovery under the Act. See generally Ex parte Murray, 490 So.2d 1230, 1232-33 (Ala. 1984). "The employee has the burden of proving that the employer had notice or knowledge of the injury." Wal-Mart Stores, Inc. v. Elliott, 650 So.2d 906, 908 (Ala. Civ. App. 1994).

United Auto Workers Local 1155 v. Fortenberry, --- So.2d ----, 2005 WL 2679996 at *3 ( Ala. Civ. App. 2005). Section 25-5-80 of the Alabama Code states, in part:

> In case of a personal injury not involving cumulative physical stress, all claims for compensation under this article shall be forever barred unless within two years after the accident the parties shall have agreed upon the compensation payable under this article or unless within two years after the accident one of the parties shall have filed a verified complaint as provided in Section 25-5-88. . . .

"The 'commencement of [a workers' compensation] action within the time prescribed by the statute is an indispensable condition to the liability of the [employer] and to [the worker's] right

9

to sue.'" Gulf States Steel, Inc. v. White, 742 So.2d 1264, 1267 (Ala. Civ. App. 1999) (citations omitted). Section 25-5-78 of the Alabama Code requires an employee "to give notice to the employer of that accident and injury within 90 days or be barred from any recovery therefor under the Act." Fort James Operating Co. v. Crump, --- So.2d ----, 2005 WL 1532326 at *14 (Ala. Civ. App. 2005). Thus, an employee must give actual notice to his employer that he sustained an injury at work within 90 days of the incident that caused the injury, and seek recovery within two years of the date of incident in which the injury occurred to be eligible to receive compensation. Plaintiff has admitted that there are no open claims on the policies. Thus, an employee who was injured at work during the life of the policies is now foreclosed from seeking workers' compensation benefits. Therefore, because any damage that Liberty may suffer in the future is both speculative and statutorily impossible, it has suffered no out of pocket loss because of Brownrigg's alleged misrepresentation, and its claim for negligent misrepresentation fails as a matter of law.

## IV.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED.  IT IS FURTHER ORDERED** that defendant Brownrigg's Motion for Summary Judgment is **GRANTED.**

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATED: January 10, 2006

## CERTIFICATE OF SERVICE

    Copies of this Order were mailed to Michael P. Donnelly and Philip G. Meyer on this date by ordinary mail and/or electronic filing.

        s/Bernadette M. Thebolt
         DEPUTY CLERK